John PETTIT, District Attorney
of Washington County,
Pennsylvania

v.

Michael NAMIE, Controller
of Washington County,
Pennsylvania

Appeal of: Board of Commissioners of
Washington County, Washington
County and Michael Namie.

John Pettit, District Attorney of
Washington County, Penn-
sylvania, Appellant

v.

Michael L. Namie, Controller of Wash-
ington County, Pennsylvania, Board
of Commissioners of Washington
County, Pennsylvania and Frederick
A. Brilla, an individual.

Commonwealth Court of Pennsylvania.

Argued May 8, 2007.

Decided Aug. 10, 2007.

Anthony Cillo, Pittsburgh, for designated appellant, John Pettit.

Eric J. Held and Mary J. Drewitz, Washington, for appellees, Michael Namie, Board of Commissioners of Washington County, and Washington County.

BEFORE: LEADBETTER, President Judge, and SMITH–RIBNER, Judge, and SIMPSON, Judge.

OPINION BY Judge SIMPSON.

In these complex cross-appeals, we are asked whether indemnification by a local agency for payment of a judgment against a county district attorney in a federal civil rights action is prohibited under the statute commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act).[1] We are also asked whether the county district attorney is entitled to reimbursement for attorney's fees, costs, expenses and prejudgment interest.

For the reasons that follow, we conclude the county district attorney is entitled to indemnification for the judgment entered against him as well as reimbursement for attorney's fees, costs, and expenses incurred in defending his official action. However, we deny District Attorney's request for prejudgment interest on the grounds District Attorney did not properly preserve this request.

## I. Factual and Procedural History

### A. Initial State Proceedings

#### 1. Seizure

In September 1989, the Pennsylvania State Police executed a search warrant at the residence of Frederick A. Brilla (Brilla) and seized weapons, cocaine, drug paraphernalia, a computer, television, stereo, two motorcycles, lawn and garden equipment and over $50,000 in cash.

The personal property seized was stored in a facility under a rental agreement that listed the District Attorney of Washington County as "tenant" and Aunt Mini Self Storage as "landlord." The Washington County District Attorney's Office paid the monthly rental fee for the facility.

#### 2. Conviction

Brilla was convicted. In 1993, the Court of Common Pleas of Washington County (court of common pleas) sentenced him to a term of four to ten years' incarceration for possession and possession with intent to deliver cocaine.

#### 3. Forfeiture

Section 6801 of the Judicial Code, 42 Pa.C.S. § 6801, in the Act commonly known as the Controlled Substances Forfeiture Act (Forfeiture Act),[2] provides a detailed scheme for the seizure, custody and ultimate disposition of property subject to forfeiture. The Forfeiture Act distinguishes between the rights and corresponding obligations of the Attorney General and county district attorneys. Under the Forfeiture Act, the ultimate beneficiary of a forfeiture action depends on which law enforcement agency seized the property at issue. If the law enforcement agency that seized the property had statewide jurisdiction, the property is ultimately forfeited to the Attorney General. Alternatively, if the law enforcement agency that seized the property had only local or county jurisdiction, the local district attorney's office is the beneficiary of the forfeiture. See 42 Pa.C.S. § 6801(e).

---

1. 42 Pa.C.S. §§ 8541–64.

2. 42 Pa.C.S. §§ 6801–6802.

In October 1991, the *Pennsylvania Attorney General's Office* filed a forfeiture action in common pleas court to obtain ownership of the property seized by the State Police.

In February 1995, the court of common pleas dismissed the forfeiture action as untimely. Although Washington County District Attorney John Pettit (District Attorney) was not a party to this proceeding, it is presumed the order dismissing the forfeiture action was sent to the District Attorney's Office as well as the Attorney General's Office.

### 4. Return of Property

While incarcerated, Brilla wrote to the court of common pleas seeking return of his property. Notably, Brilla did not own the lawn and garden equipment seized by the State Police; rather, he leased it from the "Rt. 19 Mower Center." Upon the Mower Center's motion, the court of common pleas ordered release of the lawn and garden equipment, and the Mower Center obtained its property from the State Police. Of further note, the court of common pleas' order indicates the "equipment [was] stored by agencies of the Commonwealth of Pennsylvania." Reproduced Record (R.R.) at 44a.

Shortly thereafter, the court of common pleas issued an order requiring the return of Brilla's remaining personal property within 90 days; however, the property was not returned within this period. Several months later, the remaining property was transferred to the Washington County Jail, with the smaller items stored in the District Attorney's Office.

### 5. Enforcement

Approximately two years later, in 1998, Brilla filed a petition to enforce the court

of common pleas' order requiring return of his property. The court of common pleas denied the petition, stating "the Commonwealth has substantially complied." R.R. at 47a. Brilla filed a motion for reconsideration; the record fails to reveal a ruling on the motion.

### B. Federal Suit

### 1. Trial

In June 1998, Brilla filed a civil rights action against District Attorney in the U.S. District Court for the Western District of Pennsylvania. Brilla alleged District Attorney unlawfully deprived him of his property in violation of the Fourteenth Amendment to the U.S. Constitution because certain items of property were never returned and other items were retained for an unreasonable period. Brilla sought compensatory and punitive damages.[3]

In June 2001, the federal suit was tried before the Honorable Robert J. Cindrich. After a four-day jury trial, the jury returned a verdict finding District Attorney liable for violating Brilla's constitutional rights by depriving him of the use of his property. The jury awarded no compensatory damages, $1.00 in nominal damages and $100,000 in punitive damages, finding District Attorney acted "maliciously or in reckless or callous disregard of, or indifference to" Brilla's constitutional rights. U.S. Dist. Ct., Slip Op. at 4–7; R.R. at 130a–33a.

### 2. Post-trial

District Attorney filed a post-trial motion in the nature of a motion for judgment as a matter of law and/or a new trial, as well as a motion seeking remittitur.

---

3. During the pendency of the federal suit, the property, minus a photo album, was returned to Brilla.

Judge Cindrich denied District Attorney's motion for judgment as a matter of law and/or a new trial, but granted remittitur, reducing the punitive damage award to $50,000. Judge Cindrich also granted Brilla's motion for attorney's fees and costs totaling $15,665.48.

### 3. Appeal

District Attorney appealed to the Third Circuit Court of Appeals, which affirmed in an unpublished opinion authored by the Honorable Ruggero J. Aldisert. *See Brilla v. Pettit*, 57 Fed. Appx. 947 (3d Cir.), *cert. denied*, 540 U.S. 813, 124 S.Ct. 62, 157 L.Ed.2d 26 (2003); R.R. at 172a–76a. The Court of Appeals also awarded Brilla $4,771.40 in additional attorney's fees and expenses.

### C. Current State Proceedings

### 1. Indemnification Demand

District Attorney subsequently requested the Washington County Board of Commissioners (Commissioners) to indemnify him for the judgment entered against him in Brilla's federal suit. He also sought reimbursement for attorney's fees and costs he incurred in federal court after the jury's verdict.

In October 2003, the Commissioners, acting on advice of their solicitor, voted to indemnify District Attorney and requested the County Controller Michael L. Namie (Controller), make payment to District Attorney. However, the Controller subsequently advised the Commissioners he was denying payment to District Attorney.

### 2. Satisfaction

In August 2004, District Attorney satisfied the judgment against him by paying $75,176.36 to the Estate of Brilla.[4] This

amount represented the verdict, attorney's fees, costs and expenses awarded to Brilla as well as interest on that amount.

### 3. Mandamus and Declaratory Judgment Action

Thereafter, District Attorney filed a complaint in mandamus and for declaratory judgment against the Controller and named as interested parties the Commissioners and Brilla. District Attorney requested: a declaration that Washington County is obligated to indemnify him under the Tort Claims Act; a declaration that the Commissioners acted in a manner authorized by law in voting to indemnify him; and, peremptory judgment so as to compel the Controller to issue payment. In response to motions, the common pleas court declined to grant mandamus relief, but preserved the request for declaratory relief.

District Attorney subsequently filed a motion for summary judgment on his claims for declaratory relief. The Commissioners and the Controller also filed separate cross-motions for summary judgment.

### 4. Decision

The court of common pleas subsequently issued an opinion and order in which it determined the County was required to indemnify District Attorney for the judgment entered against him in Brilla's federal civil rights action. The court of common pleas also determined the County was required to reimburse District Attorney for reasonable attorney's fees and costs incurred in pursuing post-trial motions and appeals in federal court.

---

4. After the conclusion of his federal civil rights action, Brilla was the victim of a homicide in November 2003.

In its opinion, the court of common pleas indicated there were no genuine issues of material fact and it could decide the motions for summary judgment based on the substantive law. The court first noted pursuant to Section 8548(a) of the Tort Claims Act, when an action is brought against an employee of a local agency for damages arising out of an injury to a person or property, and the injury resulted from conduct of the employee that was within his or her scope of employment, the local agency is obligated to indemnify the employee for the payment of a judgment in that action. 42 Pa.C.S. 8548(a). The court of common pleas also noted, however, an employee's immunity does not extend to acts judicially determined to be crimes, actual fraud, actual malice, or willful misconduct. 42 Pa.C.S. 8550. The court further indicated that punitive damages may be awarded for *reckless* conduct, which is *not* the same as *intentional* or *willful* misconduct.

The court of common pleas explained that if the federal jury found District Attorney harbored any of several distinct states of mind (malicious *or* wanton *or* oppressive), it would be legally sufficient for an award of punitive damages. However, not all of those states of mind preclude indemnification.

In this regard, the common pleas court accepted the federal court's determination that at the federal trial "there was evidence from which a jury reasonably could find that [District Attorney] acted in *reckless* or callous disregard of, or indifference to Brilla's property rights." Ct. of Common Pleas, Slip Op. at 10 (quoting U.S. Dist. Ct., Slip Op. at 5) (emphasis added). The court of common pleas examined the difference between reckless conduct and willful misconduct, the latter of which precludes indemnification.

Confirming this distinction, the common pleas court addressed the federal court's jury instruction defining the term "wantonly," which equated "wanton conduct" to "reckless conduct." *Id.* The court of common pleas further stated:

[I]t is unclear whether the jury found [District Attorney's] conduct was with "actual malice or willful misconduct" which would preclude indemnification or whether it found his conduct was "wanton", i.e., "reckless or callous disregard or indifference to Brilla's property rights" which would permit indemnification.

Therefore, there has been no definitive judicial determination that [District Attorney's] conduct, although it caused injury to Brilla, constituted "actual malice or willful misconduct" that would relieve [the] County . . . from indemnifying [District Attorney] for the judgment entered against him. . . .

Ct. of Common Pleas, Slip Op. of 10/16/06 at 11. As such, the court of common pleas determined District Attorney was entitled to indemnification from the County.

The court of common pleas also noted the attorney provided by the County or its insurance carrier withdrew representation of District Attorney at the end of the federal suit, at which point District Attorney retained his own counsel. The court of common pleas noted Section 8547 of the Tort Claims Act requires local agencies or governments to defend their employees or to reimburse them for reasonable attorney's fees, costs and expenses in defending a lawsuit. *See Mosley v. Pollock,* 427 Pa.Super. 483, 629 A.2d 971 (1993). Thus, the court determined District Attorney was entitled to reimbursement for the attorney's fees and costs incurred in pursing post-trial motions and appeals. Both parties appealed to this Court.

## II. Issues on Appeal

On appeal, the Controller, the Commissioners and the County (collectively, the County) assert the court of common pleas erred in determining District Attorney is entitled to indemnification. They further assert the court of common pleas erred in requiring the County to reimburse District Attorney for attorney's fees and costs.

In his cross-appeal, District Attorney contends he is entitled to pre-judgment interest on the indemnity payment the court of common pleas ordered the County to make under the Tort Claims Act.[5]

## III. Discussion

### A. Scope and Standard of Review

At the outset, we note, our scope of review of an order granting summary judgment is plenary. *Minn. Fire & Cas. Co. v. Greenfield*, 579 Pa. 333, 855 A.2d 854 (2004). We will reverse the order of a trial court only where the court committed an error of law or clearly abused its discretion. *Id.* When reviewing an order granting summary judgment, a reviewing court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. *Id.*

### B. Indemnification

The County first argues District Attorney is not entitled to indemnification as a matter of law. It maintains District Attorney intentionally *and* maliciously, wantonly or oppressively deprived Brilla of his property with reckless or callous disregard as to whether his conduct violated Brilla's constitutional rights. By awarding nominal and punitive damages, the County contends, a federal jury determined District Attorney's conduct was intentional and malicious. Because District Attorney did not comply with the court of common pleas' order requiring return of Brilla's property and a jury found this act was intentional *and* malicious, wanton or oppressive, it maintains, Section 8550 of the Tort Claims Act, 42 Pa.C.S. § 8550, bars indemnification here.

The County further asserts in *Kuzel v. Krause*, 658 A.2d 856 (Pa.Cmwlth.1995), this Court explained "willful misconduct" as used in Section 8550 means "willful misconduct aforethought" and is synonymous with "intentional tort." *See Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289 (1994). It asserts District Attorney's conduct meets this standard. *See Reitz v. County of Bucks*, 125 F.3d 139 (3d Cir. 1997).

The County argues the court of common pleas erred in holding that District Attorney's conduct was within the scope of his office and that he reasonably believed he acted within the scope of his duties. It asserts the court of common pleas also erred in determining it was unclear whether the jury found District Attorney's conduct to be with "actual malice or willful misconduct." The County contends, based on Judge Cindrich's instruction to the jury that it could award punitive damages if it found District Attorney's conduct was "intentional *and* malicious, wanton or oppressive," and the jury's award, the jury believed District Attorney's conduct was intentional.

The County further argues District Attorney did not have to intend to violate Brilla's constitutional rights. Where there

---

**5.** After the Controller's initial appeal to this Court, an amended notice of appeal was filed on behalf of the Controller, the Commissioners and the County. District Attorney filed a cross-appeal. We consolidated the appeals.

is *no* evidence that gives rise to an inference of actual malice or conduct deemed equivalent to actual malice, it asserts, a trial court need not submit the issue of punitive damages to the jury. Here, the County contends, Judge Cindrich was convinced the evidence was sufficient to support a finding that District Attorney's conduct was intentional.

District Attorney responds a determination that a local government employee's conduct constitutes an intentional tort may be enough to prove willful misconduct, but a determination the employee engaged in reckless conduct is not sufficient to prove willful misconduct. *See, e.g., Evans v. Phila. Transp. Co.*, 418 Pa. 567, 212 A.2d 440 (1965); *Owens v. City of Phila.*, 6 F.Supp.2d 373 (E.D.Pa.1998). District Attorney argues an individual's conduct is deemed reckless if he knows or has reason to know harm may result from his conduct. *See Evans.* Here, he contends, the court of common pleas correctly determined the federal jury's verdict could be based on reckless conduct and the County did not sustain its burden of proving there was a judicial determination he engaged in willful misconduct.

■ Initially, we begin by noting that in Pennsylvania, district attorneys are properly considered county rather than state officers. Indeed, as the Third Circuit Court of Appeals thoroughly explained:

Pennsylvania's Constitution *expressly* defines [d]istrict [a]ttorneys as county rather than state officers. *See* Pa. Const., art. IX, § 4 ("County officers shall consist of ... district attorneys ... and such others as may from time to time be provided by law."). The Pennsylvania Supreme Court has held equivalent language from a prior version of

the Pennsylvania Constitution to be "crystal clear": the court explained that "[the Pennsylvania Constitution] states in the clearest imaginable language that district attorneys are county-not state officers...." *Chalfin v. Specter,* 426 Pa. 464, 233 A.2d 562, 565 (1967)....

Pennsylvania's statutes also reflect the local status of the [district attorney's] [o]ffice. Under the Commonwealth Attorney's Act of 1850, 71 P.S. 732-101, *et seq.*, district attorneys were redefined as the "chief law enforcement officer[s] for the county in which [they were] elected." *Id.* at § 732-206(a).[6] Since that time, local district attorneys have been elected and funded by their counties. Other provisions of Pennsylvania statutory law similarly treat district attorneys as county officials.

The Pennsylvania Supreme Court has found it significant that "the powers and functions of the [district attorney's] office are found in Title 16, Counties, of Purdon's Statutes." *Duggan v. 807 Liberty Ave. Inc.*, 447 Pa. 281, 288 A.2d 750, 752 n. 6. (1972) (declining to hold district attorney as "officer of the Commonwealth" under jurisdiction of Commonwealth Court). *See also Cross v. Meisel,* 720 F.Supp. 486, 488 n. 3 (E.D.Pa.1989) (explaining that case regarding "state officials" was irrelevant to suit against district attorney because, besides constitutional definition as county officers, district attorneys' duties are defined in the County Code and their expenses are paid by the county from its general funds).

Consistent with its constitutional and statutory law, Pennsylvania's case law defines district attorneys ... as local,

6. "Prior to 1850, district attorneys had been appointed by the Attorney General, a state executive, and were subject to his direct supervision and control." *Carter v. City of Phila.*, 181 F.3d 339, 349, n. 28 (3d Cir.1999).

and expressly *not* state, officials. *See Chalfin*, 233 A.2d at 565. *See also* . . . *Schroeck v. Pennsylvania State Police*, [26 Pa.Cmwlth. 41, 362 A.2d 486, 490 (1976)] ("District Attorneys and their assistants are officers of the counties in which they are elected and not officers of the Commonwealth.") (citing Section 401(a)(11) of the County Code, *as amended*[,] 16 P.S. 401(a)(11)) . . . .

*Carter v. City of Phila.*, 181 F.3d 339, 349–50 (3d Cir.1999). Thus, the District Attorney is a county rather than a state officer.

■ Having determined the District Attorney is a county officer, we next consider the relevant immunity statute. To that end, we note, a county is a local agency to which governmental immunity, as set forth in the Tort Claims Act, applies. *See Simko v. County of Allegheny*, 869 A.2d 571 (Pa.Cmwlth.2005), *appeal denied*, 587 Pa. 703, 897 A.2d 462 (2006). Section 8545 of the Tort Claims Act, which relates to official immunity for local agency employees, states:

**§ 8545. Official liability generally**

An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter.

42 Pa.C.S. § 8545. Essentially, this provision states the liability of local agency employees cannot exceed the liability of their employing agency. A local agency's liability is limited by Section 8541 of the Tort Claims Act, which provides:

**§ 8541. Governmental immunity generally**

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa.C.S. 8541.[7] Of particular import here, Section 8548(a) of the Tort Claims Act provides:

**(a) Indemnity by local agency generally.**—When an action is brought against an employee of a local agency for damages on account of an injury to a person or property, and he has given timely prior written notice to the local agency, and it is judicially determined that an act of the employee caused the injury and such act was, or that the employee in good faith reasonably believed that such act was, within the scope of his office or duties, the local agency shall indemnify the employee for the payment of any judgment of the suit.

42 Pa.C.S. 8548(a). The term "employee" includes elected officers acting on behalf of a government unit. *See* 42 Pa.C.S. 8501. The purpose of this indemnification provision "is to permit local agency employees to perform their official duties without fear of personal liability, whether pursuant to state or federal law, so long as the conduct is performed during the course of their employment." *Wiehagen v. Borough of N. Braddock*, 527 Pa. 517, 522, 594 A.2d 303, 306 (1991).

■ However, a subsequent section of the Tort Claims Act lifts the immunity in certain cases. It states:

**§ 8550. Willful misconduct**

In any action against a local agency or employee thereof for damages on account of an injury caused by the act of

---

**7.** There are eight "acts" excepted from the immunity granted under Section 8541, but none apply here. *See* 42 Pa.C.S. 8542.

the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or *willful misconduct,* the provisions of section[ ] 8548 (relating to indemnity) shall not apply.

42 Pa.C.S. 8550 (emphasis added). Notably, the local government agency attempting to avoid its indemnity obligation bears the burden of proving there was a judicial determination of willful misconduct. *Renk.*

Numerous courts address how a local agency must prove a judicial determination of willful misconduct which will nullify a duty of indemnity. Of these decisions, the parties direct our attention to our Supreme Court's decisions in *Wiehagen* and *Renk* and this Court's decision in *Kuzel.* As such, a review of those cases is helpful.

First, in 1991, in *Wiehagen,* the Supreme Court held a police officer was entitled to indemnification under the Tort Claims Act for compensatory damages, attorney's fees, costs and expenses awarded to a plaintiff in a federal civil rights action. The plaintiff brought suit against the police officer and the municipality pursuant to 42 U.S.C.1983 based on the officer's act in striking him after his arrest for public intoxication. A federal jury awarded the plaintiff compensatory damages, finding the officer used more force than necessary while acting within the scope of his duties. Thereafter, the officer brought suit seeking indemnification from the municipality under Section 8548(a) of the Tort Claims Act. Our Supreme Court held the municipality was required to indemnify the police officer because there was a judgment entered against him arising from conduct within the scope of his employment. The Court further held such indemnification included the plaintiff's reasonable attorney's fees, costs and expenses.

Less than three years later, our Supreme Court decided *Renk.* There, the Court held a police officer could be indemnified for payment of a judgment entered in a civil action for assault and battery and false imprisonment absent a judicial determination that the officer's acts constituted willful misconduct. In *Renk,* a police officer struck an individual during an arrest for disorderly conduct and detained him in a jail cell in the police station while the officer wrote the citation for the offense. The citation was dismissed when the officer failed to appear at a scheduled hearing. As a result, the individual brought suit, asserting a federal claim as well as state claims for assault, battery, false imprisonment and emotional distress. The jury found the officer liable on the state claims and awarded both compensatory and punitive damages. The officer subsequently filed suit seeking indemnification from the municipality. Our Supreme Court held:

A police officer may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive, and for false imprisonment when a jury concludes that he did not have probable cause to make an arrest. It is conceivable that a jury could find a police officer liable for those torts under circumstances which demonstrate that the officer did not intentionally use unnecessary and excessive force, or did not deliberately arrest a person knowing that he lacked probable cause to do so. In this case, it is unclear whether the jury in the federal action determined that [the officer] intentionally used excessive force in [effectuating the arrest], or only that he intentionally used force. Similarly, the jury's verdict does not resolve the issue of whether [the officer] intentionally [effectuated the arrest] knowing that he lacked probable cause to do so,

or only that he lacked probable cause to make the arrest.

The [municipality] relied solely upon the jury's verdict in the federal action and did not introduce any other evidence to support its claim that [the officer's] acts were willful misconduct. The jury verdict alone is insufficient to establish willful misconduct in this case. Nor is the award of punitive damages sufficient to establish willful misconduct, since reckless conduct may be sufficient to support such an award. Based upon the evidence of record, we find that the [municipality] failed to establish that [the officer's] acts were willful misconduct.

*Renk*, 537 Pa. at 76–77, 641 A.2d at 293–94 (citation and footnote omitted).[8]

Approximately a year after the Supreme Court's decision in *Renk*, an *en banc* panel of this Court decided *Kuzel*. There, a township board of commissioners voted to terminate two part-time township police officers who were injured and receiving workers' compensation benefits. In response, the officers filed a wrongful discharge suit against the township and its commissioners. Ultimately, a jury found one of the township commissioners liable, and awarded punitive (but not compensatory) damages. The commissioner filed post-trial motions, asserting, among other things, he was entitled to official immunity. The trial court denied the commissioner's motion. Before this Court, the commissioner argued he was entitled to official immunity and there was no record evidence to establish his acts amounted to willful misconduct. The police officers

countered there was sufficient testimony to establish the commissioner's actions in wrongfully discharging them for filing workers' compensation claims rose to the level of wrongful intent. Ultimately, this Court held the commissioner was entitled to immunity and his actions did not rise to the level of willful misconduct. We stated:

[The police officers] contend that [the commissioner] is not entitled to official immunity based on the following reasoning: they made out a claim of wrongful discharge; wrongful discharge is an intentional tort; an intentional tort is willful misconduct; willful misconduct makes the defense of official immunity unavailable to [the commissioner]. We adopted similar reasoning in [a case] involving a claim of intentional infliction of emotional distress. Because an intentional tort is synonymous with willful misconduct, we held that official immunity was precluded by the 42 Pa.C.S. 8550 exclusion for willful misconduct. However, that interpretation of "willful misconduct" was rejected by our Supreme Court in [*Renk*].

In effect the Supreme Court found [in *Renk*] that *"willful misconduct," as used in 42 Pa.C.S. 8550, means "willful misconduct aforethought."*

Because of our Supreme Court's interpretation of 42 Pa.C.S. 8550, willful misconduct requires [the police officers] here to establish more than wrongful discharge to make the defense of official immunity unavailable to [the commissioner]. [The police officers] also had to

---

8. In so holding, the Supreme Court distinguished this Court's earlier decision in *King v. Breach*, 115 Pa.Cmwlth. 355, 540 A.2d 976 (1988), explaining:

> The [municipality] focuses on the language in the *King* decision that equates willful misconduct with intentional torts, asserting that the jury's finding in the feder-

al action that Renk was liable for assault or battery and false imprisonment is conclusive of this issue. This equation has no validity in the context of a lawsuit based upon police conduct, however. The *King* decision, which did not involve police conduct, is of no precedential value.

*Renk*, 537 Pa. at 75–76, 641 A.2d at 293.

establish that [the] [c]ommissioner knew or should have known that it was improper to terminate someone for receiving work[ers'] compensation and did so anyway. *There is no evidence [the commissioner] knew that it was improper or against public policy to terminate [the officers], just that they were receiving work[ers'] compensation benefits and it would be better to replace them with police officers who were able to work.* Because his conduct was a discretionary act entitling him to immunity and was not willful, official immunity forecloses this action being maintained against [the commissioner].

*Kuzel,* 658 A.2d at 860 (emphasis added).

■ From these cases, *all of which permitted indemnification,* we glean the following rules. First, the Tort Claims Act's indemnification provision applies to *any* judgment, state or federal, that may be rendered against an employee while acting within the scope of his employment. *Wiehagen.* Second, such indemnification includes reasonable attorney's fees, costs and expenses incurred by the employee in the underlying action. *Id.* Third, in cases involving police conduct, a jury verdict that a police officer committed an intentional tort, by itself, is insufficient to establish "willful misconduct." *Renk.* Rather, to establish willful misconduct, it must be shown the officer intended to commit the intentional tort. *Id.* Fourth, an award of punitive damages is not, by itself, sufficient to establish willful misconduct, because reckless conduct can be sufficient to support such an award. *Id.* Fifth, to establish willful misconduct, it must be shown that an employee *intentionally* committed a wrongful act. *Kuzel.* "Willful misconduct," as set forth in Section 8550 of the Tort Claims Act, means "willful misconduct aforethought." *Id.* at 860.

This analysis is consistent with general tort law which distinguishes between several culpable states of mind. Thus, our Supreme Court distinguishes between wanton and willful misconduct. More specifically, the Court holds:

> *[W]illful misconduct means that the actor desired to bring about the result that followed,* or at least that he was aware that it was substantially certain to ensue. This, of course, would necessarily entail actual prior knowledge of the trespasser's peril. *Wanton misconduct,* on the other hand, *means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.*

*Evans,* 418 Pa. at 574, 212 A.2d at 443; *see also Williams v. City of Phila.,* 131 Pa. Cmwlth. 71, 569 A.2d 419, 421–22 (1990) ("[T]he failure of [two public employees] to take greater precautionary measures in light of the circumstances, exemplifies a reckless disregard of the existing danger; however, that behavior constitutes wanton, not willful, misconduct.... [T]hey are immune from liability under section 8545 of the [Tort Claims Act]."); *Scott v. Willis,* 116 Pa.Cmwlth. 327, 543 A.2d 165, 169 (1988) ("[A]llegations of 'gross and culpable negligence' and 'wanton and reckless behavior' are not the legal equivalent of willful and intentional misconduct.")

■ Additionally, to hold an individual liable on a Section 1983 claim, a plaintiff must prove a deprivation of a right guaranteed by the Constitution or the laws of the United States by a defendant acting under color of law. *Tunstall v. Office of Judicial Support of Court of Common Pleas of Delaware County,* 820 F.2d 631 (3d Cir.1987) (citing *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56

L.Ed.2d 185 (1978)). There are two essential elements necessary to establish a claim under 42 U.S.C.1983: the conduct complained of was committed by a person acting under color of state law; and, the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Jones v. City of Phila.,* 890 A.2d 1188 (Pa.Cmwlth.), *appeal denied,* 589 Pa. 741, 909 A.2d 1291 (2006).

■ Further, with regard to punitive damages in a Section 1983 claim, the U.S. Supreme Court holds "a jury may be permitted to assess punitive damages in an action under 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, *or* when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (emphasis added). The Third Circuit holds this standard is disjunctive, and thus the defendant's conduct need only be reckless or callous. *See Springer v. Henry,* 435 F.3d 268 (3d Cir. 2006) (citing *Savarese v. Agriss,* 883 F.2d 1194, 1204 (3d Cir.1989)).

■ Applying these principles here, we note that in the federal civil rights action against District Attorney, the jury responded affirmatively to the following interrogatories:

1. Did [District Attorney] deprive [Brilla] of his Constitutional rights by unlawfully depriving him of the use of his property?

\* \* \*

4. If you answered "Yes" to Question No. 1, do you find that [District Attorney's] conduct was malicious, *wanton, or* oppressive?

R.R. at 61a–62a (emphasis added). Based on its affirmative response to Interrogatory No. 4, the jury awarded punitive damages against District Attorney.

In instructing the jury on the law applicable to Brilla's civil rights claim, the federal trial court stated (in relevant part):

The first element that the plaintiff must prove by a preponderance of the evidence is that the defendant took custody of his property and intentionally performed acts to either, one, permanently deprive him of the use of such property or, two, to deprive him of the use of such property for an unreasonable length of time.

You can only find the defendant responsible in this case if you find that he deprived the plaintiff of his constitutional rights and that his conduct was intentional *or in reckless disregard* of the plaintiff's rights.

An act is intentional if it is done knowingly, that is, voluntarily and deliberate[ly], not because of mistake, accident, negligence or other innocent reason.

An act done with *reckless disregard* is one done in callous disregard or indifference to a plaintiff's constitutionally protected rights....

R.R. at 115a–16a. The federal trial court also instructed the jury "the parties ... stipulated that [District Attorney] was acting under color of state law in his dealings with [Brilla] and [Brilla's] property." R.R. at 115a.

Further, with regard to the issue of punitive damages, the federal trial court instructed the jury:

In this case, if you find that the defendant intentionally deprived the plaintiff of his rights under the Constitution of the United States and that such act was maliciously, *wantonly* or oppressively done, you may award punitive damages against the defendant....

An act is malicious when it includes ill will in the sense of spite or in a reckless and oppressive disregard of the plaintiff's constitutionally protected rights.

*An act is wantonly done if it is done in reckless or callous disregard of or indifference to the plaintiff's constitutionally protected rights.*

An act is oppressively done if done in a way or manner which injures or damages or otherwise violates the plaintiff's constitutionally protected rights with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness or disability or misfortune of the plaintiff.

R.R. at 122a–24a. Thus, if the jury found District Attorney acted maliciously, wantonly, *or* oppressively, it could award punitive damages.

Further, in denying District Attorney's post-trial motion challenging the punitive damage award, the federal trial court explained:

As we properly instructed the jury, *punitive damages may be awarded when a defendant deprives a plaintiff of a constitutionally protected right* maliciously or *in reckless or callous disregard of, or indifference to such protected right.* . . .

[District Attorney] bases his motion on the same version of events that he argued to the jury. [District Attorney] contends, for example, that the evidence does not support a finding that he acted maliciously or in reckless or callous disregard of, or indifference to Brilla's Constitutionally protected rights because the seizure of the property was initiated not by him but by the Pennsylvania State Police; that the subsequent forfeiture action was initiated not by him but by the Pennsylvania Attorney General's Office; that he never had pos-

session, custody, or control over the property; that his involvement with the property was limited to preservation and protection only; that he believed he did not have the authority to release the property; that his office was not a party to the state court proceeding which resulted in the issuance of an April 1996 court order directing the return of Brilla's property; that he was unaware of the situation involving Brilla's property until the filing of the instant suit and that soon [after] the suit was filed the property was returned; and that he had no personal or official motive for retaining the property.

Although we recognize that this is [District Attorney's] version of events, *there was evidence from which a jury reasonably could find that he acted in reckless or callous disregard of, or indifference to Brilla's property rights.* . . .

In sum, when viewing the evidence in a light most favorable to Brilla and giving him the advantage of every fair and reasonable inference, *we cannot find that there was insufficient evidence from which a jury reasonably could find that [District Attorney] acted with reckless or callous disregard of, or indifference to Brilla's constitutionally protected property rights.*

R.R. at 130a–31a, 132a–33a (footnote omitted) (emphasis added). In affirming this decision, the Third Circuit Court of Appeals stated:

The jury could certainly infer from [District Attorney's] involvement—as an attorney, no less—that he should have known that a forfeiture proceeding could never take 11 years to come to fruition, and that at some point he should have questioned whether he was properly continuing to be the "stakeholder" of Brilla's property. *His indifference to the issue of whether he was justified in*

*keeping such property gave rise to the award of punitive damages.*

R.R. at 174a (emphasis added).

In sum, the federal trial court instructed the jury it could find District Attorney liable if it determined he deprived Brilla of his constitutional rights and his conduct was intentional *or in reckless disregard* of Brilla's rights. In answering the interrogatories, the jury determined: (1) District Attorney deprived Brilla of his constitutional rights by unlawfully depriving him of the use of his property; and (2) District Attorney's conduct was "malicious, *wanton or* oppressive." R.R. at 61a–62a (emphasis added). As noted, the federal trial court instructed the jury an act is "wantonly" done "if it is done in reckless or callous disregard of or indifference to the plaintiff's constitutionally protected rights." R.R. at 124a.

Thus, the jury could have determined District Attorney acted recklessly or in callous disregard of or indifference to Brilla's property rights rather than willfully or intentionally. If so, such a determination would not preclude indemnification.

The County relies on the federal jury's verdict to support its claim that District Attorney committed willful misconduct. As the court of common pleas correctly determined, however, the ambiguous jury verdict alone is insufficient to establish willful misconduct. *Renk.* Nor is the award of punitive damages sufficient to establish willful misconduct. This is because reckless conduct may be sufficient to support a punitive damage award but insufficient to preclude indemnification. *Id.* In short, we conclude the County did not carry its burden of proving a judicial determination of willful misconduct.[9] Therefore, we discern no error in the court of common pleas' determination that District Attorney is entitled to indemnification.[10]

**9.** In addition, the Third Circuit's decision in *Reitz,* relied on by the County for the proposition that District Attorney's conduct here amounted to willful misconduct, is inapposite. *Reitz* involved a state forfeiture proceeding in which police seized certain property after making arrests for drug-related offenses. Several plaintiffs brought suit against, among others, several county prosecutors, alleging they failed to comply with a court order requiring the return of certain seized property for over one year. The District Court granted the prosecutors' motions for summary judgment and dismissed the suit on the grounds the prosecutors were protected by qualified immunity. On appeal, the Third Circuit reversed, holding issues of disputed material fact existed concerning the reasonableness of the prosecutors' conduct in delaying return of the seized property, and, therefore, the case could proceed against the prosecutors.

Contrary to the County's suggestions, the Third Circuit's decision in *Reitz* does not hold the prosecutors' conduct in handling the forfeiture proceeding amounted to willful misconduct. Rather, in *Reitz,* the Third Circuit merely determined the existence of disputed facts concerning the reasonableness of the

prosecutors' conduct in delaying return of the seized property precluded the entry of summary judgment on the issue of whether the prosecutors enjoyed qualified immunity. Moreover, *Reitz* did not address indemnification under the Tort Claims Act.

**10.** Alternatively, the County argues District Attorney is not entitled to indemnification because he did not provide timely written notice to Washington County of his demand for indemnification or legal assistance, which is a statutory precondition for indemnification under Sections 8547 and 8548 of the Tort Claims Act, 42 Pa.C.S. §§ 8547, 8548.

Our review of the record reveals the County did not raise this issue during the summary judgment proceedings before the court of common pleas, despite the fact it filed a cross-motion for summary judgment. Thus, it is not surprising the court of common pleas did not address this issue. As such, this issue is waived. *See Wagner v. Erie Ins. Co.,* 801 A.2d 1226 (Pa.Super.2002), *aff'd per curiam,* 577 Pa. 563, 847 A.2d 1274 (2004) (finding waiver where appellee did not raise issue in cross-motion for summary judgment, and thus trial court did not have opportunity to address it);

## C. Attorney's Fees, Costs and Expenses

The County also asserts the court of common pleas erred in requiring it to reimburse District Attorney for attorney's fees, costs and expenses he incurred by filing post-trial motions and appeals after the jury verdict in the federal action.

District Attorney responds the court of common pleas correctly determined he is entitled to reimbursement for attorney's fees and expenses because he is entitled to retain independent counsel to protect his interests. *See Mosley.*

■■■ Section 8547 of the Tort Claims Act states, in relevant part:

(a) **Mandatory provision of legal assistance generally.**—When an action is brought against an employee of a local agency for damages on account of an injury to a person or property, and it is alleged that the act of the employee which gave rise to the claim was within the scope of the office or duties of the employee, the local agency shall, upon the written request of the employee, defend the action, unless or until there is a judicial determination that such act was not within the scope of the office or duties of the employee.

(b) **Optional provision of legal assistance generally.**—When an action is brought against an employee of a local agency for damages on account of an injury to a person or property, and it is not alleged that the act of the employee which gave rise to the claim was within the scope of his office or duties, the local agency may, upon the written request of the employee, defend the action, and such undertaking to defend thereafter may be withdrawn only with the approval of the court. If the local agency has refused a written request to defend the action, and it is judicially determined that the act was, or that the employee in good faith reasonably believed that such act was, within the scope of the office or duties of the employee and did not constitute a crime, actual fraud, actual malice or willful misconduct, the local agency shall reimburse the employee for the expenses of his legal defense in such amounts as shall be determined to be reasonable by the court.

42 Pa.C.S. 8547.

In *Mosley,* our Superior Court interpreted Section 8547 in a situation where a county district attorney sought reimbursement of counsel fees. Although the facts presented in *Mosley* differ from those presented here, in *Mosley,* the Superior Court aptly explained:

The [Tort Claims Act], it is readily apparent, was intended to protect a public employee who is sued "for damages on account of an injury to a person or property" which occurred while the employee was engaged in the scope of his or her office or duties.

The [Tort Claims Act], as interpreted by the Supreme Court, was intended to guarantee that public employees suffer no financial loss while defending acts performed within the scope of their employment. [*Wiehagen.*] To accomplish this purpose, emphasis must be placed on that portion of the statute which provides for indemnification for damages incurred as a result of acts within the scope of the employee's office or duties. Less emphasis may be placed on the nature of the claim for damages which

*see also Devine v. Hutt,* 863 A.2d 1160 (Pa.Super.2004) (arguments not raised initially before the trial court in opposition to summary judgment cannot be raised for the first time on appeal); *Robinson v. City of Phila.,* 666 A.2d 1141 (Pa.Cmwlth.1995) (finding waiver where party did not raise issue in response to motion for summary judgment).

was made. It follows that *where a [d]istrict [a]ttorney is sued personally for damages, including legal fees and costs, he is entitled to employ independent counsel to defend himself and be reimbursed for the cost thereof.*

*Mosley*, 629 A.2d at 973 (emphasis added).

In determining District Attorney here was entitled to reimbursement of reasonable attorney's fees, costs and expenses, the court of common pleas stated:

> Upon conclusion of the federal court case, counsel provided by Washington County or its insurance carrier to defend [District Attorney], withdrew any further representation of [District Attorney]. This necessitated [District Attorney] to then retain independent counsel to protect his and Washington County's interest by filing post-trial motions, appeals, etc., as outlined above. As a result, [District Attorney] incurred post trial attorney fees and expenses.

> [Sections 8547 of the Tort Claims Act] requires local agencies or governments to defend their employees for claims asserted against them in their capacity as public officers or reimburse them for reasonable attorney fees, costs and expenses in defending the lawsuit. [*Mosley*].

11. Despite ordering the County reimburse District Attorney for "the reasonable attorneys' fees and costs incurred in pursuing post trial motions and appeals" in the federal action, the court of common pleas did not award District Attorney a sum specific. *See* Ct. of Common Pleas, Slip Op. of 10/16/06 at 12, 13. Nevertheless, we do not believe a remand is required to determine the amount of the attorney's fees, costs and expenses. More particularly, if the parties are unable to agree on the reasonable value of these attorney's fees, costs and expenses, an application for supplemental relief may be filed under Section 7538(a) of the Declaratory Judgment Act (DJA), which states:

Ct. of Common Pleas, Slip Op. of 10/16/06 at 12. We discern no error in this analysis. 42 Pa.C.S. § 8547; *Wiehagen; Mosley*.[11]

### D. Prejudgment Interest

In his cross-appeal, District Attorney contends the court of common pleas erred in failing to award prejudgment interest. He argues interest is owed whenever a liquidated sum is unjustly withheld. *See Arcuri v. Weiss*, 198 Pa.Super. 506, 184 A.2d 24 (1962). District Attorney asserts, as of August 10, 2004, the date he satisfied the judgment against him, the County's indemnity obligation became fixed and liquidated. As such, he argues, he should receive prejudgment interest at a rate of 6% from that date.

District Attorney further contends where a judgment holder is entitled to prejudgment interest, the interest may be added by an appellate court while the case is on appeal. *See Fernandez v. Levin*, 519 Pa. 375, 548 A.2d 1191 (1988) (holding interest may be added to judgment to correct error even after appeal taken); *Peyton v. Margiotti*, 398 Pa. 86, 156 A.2d 865 (1959) (appellate court may increase verdict by adding interest); *Kessler v. Old Guard Mut. Ins. Co.*, 391 Pa.Super. 175, 570 A.2d 569 (1990) (prejudgment interest may be added to judgment after appeal).

> Judicial relief based on a declaratory judgment or decree may be granted whenever necessary or proper, subject to Chapter 55 (relating to limitation of time). If an application for supplemental relief is deemed sufficient the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by a previously entered declaratory judgment or decree to show cause why further relief should not be granted.

42 Pa.C.S. 7538(a). *See Juban v. Schermer*, 751 A.2d 1190 (Pa.Super.2000).

The County responds District Attorney is not entitled to prejudgment interest here. It points out the procedure for payment of County obligations is set forth in Section 1752 of the County Code,[12] and it was followed here. The County further contends District Attorney delayed action on his declaratory judgment claim for almost two years after the denial of his mandamus claim. The County maintains it is unreasonable for District Attorney to seek prejudgment interest for a period in which he chose not to pursue his action. If prejudgment interest is awarded, the County argues, the earliest possible date it could accrue is October 16, 2006, the date the court of common pleas entered judgment in favor of District Attorney.

▉ Here, the court of common pleas did not address the issue of whether District Attorney is entitled to prejudgment interest. This is not surprising, because District Attorney did not develop the claim in any manner which invited the thoughtful attention of the common pleas court. Indeed, in his brief in support of his motion for summary judgment, District Attorney's entire argument for interest consists of two words: "Moreover, the Court should award supplemental relief as is permitted pursuant to the Declaratory Judgment Act, 42 Pa.C.S. § 7538, such as for costs *and interest.*" Certified Record, Item No. 20 at 19 (emphasis added). These two words were insufficient to properly alert the court to the issue, or to frame and develop the issue as it is now presented; therefore, we conclude this issue is waived.

See Pa. R.A.P. 302(a); *Jahanshahi v. Centura Devel. Co., Inc.,* 816 A.2d 1179, 1189 (Pa.Super.2003) ("As no trial court ruling was made on the issue of prejudgment interest, at the fault of appellants, we decline to review it.") [13]

## ORDER

AND NOW, this 10th day of August, 2007, the order of the Court of Common Pleas of Washington County is **AFFIRMED.**

## DISSENTING OPINION BY Judge SMITH-RIBNER.

I respectfully dissent from the determination of the majority to affirm the order of the Court of Common Pleas of Washington County holding that John Pettit, District Attorney of Washington County, is entitled to indemnification by the County for his payment of a judgment entered against him in the U.S. District Court, Western District of Pennsylvania (District Court), and affirmed by the U.S. Third Circuit Court of Appeals (Third Circuit). Pettit was found responsible for violating Frederick A. Brilla's federal civil rights and was assessed nominal damages of $1 and punitive damages of $50,000 (reduced upon the trial court's remittitur from a jury award of $100,000) as well as attorney's fees and costs. The majority's determination of entitlement to indemnification rests primarily upon its narrow in-

---

**12.** Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 1752.

**13.** Moreover, District Attorney's citation to Section 7538 of the DJA is misplaced. As noted above, Section 7538(a) provides, in relevant part, "If an application for supplemental relief is deemed sufficient the court shall, on reasonable notice, require any adverse party *whose rights have been adjudicated by a previously entered declaratory judgment or decree* to show cause why further relief should not be granted." 42 Pa.C.S. § 7538(a). Here, at the time District Attorney made his request for "supplemental relief," no declaratory judgment had been entered; therefore, Section 7538(a) was inapplicable.

terpretation of conduct described in one single phrase in the jury interrogatories in the federal trial: "malicious, wanton or oppressive". The circumstances of this case show that there is no question whatsoever that the jury determined that Pettit engaged in intentional conduct that resulted in a deprivation of Brilla's civil rights.

I

Certain key points must be emphasized. On the same day as the original seizure of Brilla's property at issue in this case, September 13, 1989, a rental agreement was entered into between Aunt Mini Self Storage as Landlord and District Attorney of Washington County as Tenant. Ex. B; Reproduced Record (R.R.) 32a. The opinion of District Court Judge Robert J. Cindrich, ruling on Pettit's motions for judgment as a matter of law or new trial and for remittitur of jury verdict and Brilla's motion for attorney's fees and costs, stated that the evidence showed that Pettit personally paid storage fees for storage of Brilla's property for almost seven years. In October 1991 the Pennsylvania Attorney General's Office filed a forfeiture action in common pleas court under Sections 6801 and 6802 of the Judicial Code, *as amended,* 42 Pa.C.S. §§ 6801 and 6802, and in February 1995 the court of common pleas dismissed that action as untimely. The District Court noted a presumption that the order was sent to the District Attorney's Office as well as the Attorney General's Office.

On April 17, 1996, Judge Debbie O'Dell Seneca of the common pleas court issued an order for certain lawn and garden equipment among the seized property to be returned to Rt. 19 Mower Center on its motion filed at the docket of the forfeiture proceeding, and that property was returned. On April 25, 1996, Judge O'Dell

Seneca ordered that the remaining personalty that belonged to Brilla be returned to him within 90 days, except for any weapons, which were to be destroyed. The District Court pointed out that there was evidence discrediting Pettit's claimed lack of knowledge of the April 25, 1996 order, namely, that one of his assistant district attorneys was ordered to appear at a hearing in connection with that order and that Pettit's office customarily receives copies of all orders filed with the clerk of courts of the County that pertain to the return of property.

The property was not returned to Brilla pursuant to the April 1996 order. There is no dispute that some six months after the order the property was transferred from the private storage facility to the Washington County Jail and to the Office of the District Attorney's Drug Task Force. Brilla filed suit in federal district court in June 1998 claiming violation of his constitutional rights for the failure to return his property, and he sought compensatory and punitive damages. The matter was tried before District Court Judge Cindrich over four days in June 2001, and the jury found Pettit liable for violating Brilla's constitutional rights and awarded no compensatory damages, $1 in nominal damages and $100,000 in punitive damages. The District Court denied the motions for judgment as a matter of law or for a new trial but granted the motion for remittitur in part and reduced the jury award to $50,000. Pettit appealed, and the Third Circuit affirmed in an unpublished opinion authored by Third Circuit Judge Ruggero J. Aldisert.

As all parties recognize, Section 8548(a) of the Judicial Code, 42 Pa.C.S. § 8548(a), related to indemnity by local agency generally, provides that when an action is brought against an employee of a local agency for damages on account of injury to

person or property and the employee has provided written notice, the local agency shall indemnify the employee for payment of any judgment if "it is judicially determined that an act of the employee caused the injury and such act was, or that the employee in good faith reasonably believed that such act was, within the scope of his office or duties...." Section 8550, 42 Pa. C.S. § 8550, related to willful misconduct, states that in an action against a local agency or employee thereof for damages on account of injury caused by an act of an employee, if "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of ... section[ ] 8548 (relating to indemnity) ... shall not apply."

The majority concludes that there is sufficient ambiguity in this case such that it has not been "judicially determined" that the acts for which Pettit was found liable constituted "willful misconduct" within the meaning of Section 8550. To reach this conclusion, the majority relies upon the decisions in *Wiehagen v. Borough of North Braddock*, 527 Pa. 517, 594 A.2d 303 (1991), *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289 (1994), and *Kuzel v. Krause*, 658 A.2d 856 (Pa.Cmwlth.1995), and upon the phrasing of a particular interrogatory to the jury in the federal court trial and statements in the federal court opinions.

In *Wiehagen* a police officer struck an arrestee once when the arrestee attempted to strike him, knocking the arrestee to the ground. In the arrestee's civil rights suit in federal court, the jury awarded compensatory damages of $7500 plus attorney's fees and costs, finding that while acting in the scope of his duties the officer responded "instinctively" and used more force than was necessary. The issues involved were whether indemnification under Section 8548(a) applied to judgments other than those for state tort actions for which local agency immunity is waived under Section 8542 of the Judicial Code, *as amended*, 42 Pa.C.S. § 8542, and whether indemnification applies to attorney's fees and costs. The Supreme Court affirmed this Court's determination that indemnification applies to any judgment that arises from conduct within the scope of an employee's employment, and it ruled also that indemnification includes reasonable attorney's fees, costs and expenses. No issue of "willful misconduct" was involved in the analysis.

In *Renk* a police officer responded to a request for assistance from a bus driver outside a police station and removed a passenger with an expired bus pass. As he took the passenger inside there was a scuffle and the officer's elbow struck the passenger's mouth. He was detained in a cell while the officer wrote the citation, which was dismissed when the officer failed to appear at the hearing. In the passenger's later federal court suit, the jury found in favor of the officer on a claim under 42 U.S.C. § 1981, but it found the officer liable on state claims for assault, battery and false imprisonment and awarded compensatory damages of $2500 and punitive damages of $5000. On the appeal in the indemnification proceeding, the Supreme Court noted that "willful misconduct" was not addressed in *Wiehagen*. It quoted from this Court's decision in *King v. Breach*, 115 Pa.Cmwlth. 355, 540 A.2d 976 (1988), stating that willful misconduct for the purposes of tort law had been held to mean conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, citing *Evans v. Philadelphia Transp. Co.*, 418 Pa. 567, 212 A.2d 440 (1965), and further stated that "the term 'willful misconduct' is

synonymous with the term 'intentional tort'." *Renk,* 537 Pa. at 75, 641 A.2d at 293. The court discounted the precedential value of *King* because that case did not involve police conduct.

The Supreme Court reviewed the elements of assault, battery and false imprisonment and then observed: "It is conceivable that a jury could find a police officer liable for those torts under circumstances which demonstrate that the officer did not intentionally use unnecessary and excessive force, or did not deliberately arrest a person knowing that he lacked probable cause to do so." *Renk,* 537 Pa. at 76–77, 641 A.2d at 293–294. It was unclear, the court stated, whether the federal jury in that case determined that the officer intentionally used excessive force or arrested knowing that he lacked probable cause. The court added: "Nor is the award of punitive damages sufficient to establish willful misconduct, since reckless conduct may be sufficient to support such an award." *Id.* at 77, 641 A.2d at 294 (citing *Rizzo v. Haines,* 520 Pa. 484, 555 A.2d 58 (1989)).

This Court interpreted *Renk* in *Kuzel,* where part-time police officers who were laid off after they began collecting workers' compensation benefits filed suit alleging wrongful discharge, and one of the township commissioners who voted for the layoff was found liable by a jury. In the indemnification action, the Court pointed out the Supreme Court's reversal in *Renk,* and it stated: "In effect the Supreme Court found that 'willful misconduct,' as used in 42 Pa.C.S. § 8550, means 'willful misconduct aforethought.'" *Kuzel,* 658 A.2d at 860. The Court held that to defeat indemnification it would be necessary to show that the commissioner knew or should have known that it was improper to terminate someone for receiving workers' compensation and did so anyway and that

there was no evidence that the commissioner held liable knew that such a termination was improper.

## II

In this case, the majority and Pettit focus on two interrogatories posed to the jury in the federal case, to which the jury said "Yes":

1. Did [District Attorney Pettit] deprive [Brilla] of his Constitutional rights by unlawfully depriving him of the use of his property?

. . . .

4. If you answered "Yes" to Question No. 1, do you find that [District Attorney Pettit's] conduct was malicious, wanton or oppressive?

Ex. A; R.R. 61a–62a. As they note, the instructions to the jury included a statement that the first element that Brilla had to prove by a preponderance of the evidence was that Pettit took custody of Brilla's property and intentionally performed acts either, one, to permanently deprive him of the use of such property or, two, to deprive him of the use for an unreasonable length of time. The District Court stated that the jury could only find Pettit responsible, i.e., liable at all, if it found that he deprived Brilla of constitutional rights "and that his conduct was intentional or in reckless disregard of the plaintiff's rights." Transcript of Jury Trial Proceedings June 13, 2001, p. 676; R.R. 115a. The court elaborated: "An act is intentional if it is done knowingly, that is, voluntarily and deliberate[ly], not because of mistake, accident, negligence or other innocent reason. An act done with reckless disregard is one done in callous disregard or indifference to a plaintiff's constitutionally protected rights." *Id.* at 676–677; R.R. 115a–116a.

In regard to nominal damages, the District Court charged:

If you find that *the defendant intentionally performed acts which deprived the plaintiff of his rights* under the Constitution of the United States but you do not find that the plaintiff has sustained any actual damages, then you may return a verdict for the plaintiff in some nominal sum, such as $1.

*Id.* at 680; R.R. 121a (emphasis added). In regard to punitive damages, the District Court instructed as follows:

The purpose of an award of punitive damages is, first, to punish a wrongdoer for misconduct and, second, to warn others against doing the same.

In this case, if you find that *the defendant intentionally deprived the plaintiff of his rights under the Constitution of the United States* and that such act was maliciously, wantonly or oppressively done, you may award punitive damages against the defendant.

It is not necessary for the plaintiff to present direct evidence of malicious intent on the part of a defendant in order to justify an award of punitive damages against that defendant. Such intent may be inferred by you from the nature of the acts committed by the defendant and from the facts and circumstances surrounding such acts.

. . . .

An act is malicious when it includes ill will in the sense of spite *or in a reckless and oppressive disregard of the plaintiff's constitutionally protected rights.*

An act is wantonly done if it is done in reckless or callous disregard of or indifference to the plaintiff's constitutionally protected rights.

An act is oppressively done if done in a way or manner which injures or damages or otherwise violates the plaintiff's constitutionally protected rights with unnecessary harshness or severity, as by misuse or abuse of authority or power,

or by taking advantage of some weakness or disability or misfortune of the plaintiff.

*Id.* at 681–683; R.R. 122a–124a (emphasis added).

The majority quotes with emphasis the following statements in the District Court's opinion: "As we properly instructed the jury, punitive damages may be awarded when a defendant deprives a plaintiff of a constitutionally protected right maliciously or in reckless or callous disregard of, or indifference to such protected right." Slip op. at 4; R.R. 130a. The District Court summarized Pettit's version of events at trial and in his post-trial motion, presenting himself as blameless, and stated: "Although we recognize that this is Pettit's version of events, there was evidence from which a jury reasonably could have found that he acted in reckless or callous disregard of, or indifference to Brilla's property rights." *Id.* at 5; R.R. 131a. It added: "In sum, when viewing the evidence in a light most favorable to Brilla and giving him the advantage of every fair and reasonable inference, we cannot find that there was insufficient evidence from which a jury reasonably could find that Pettit acted with reckless or callous disregard of, or indifference to Brilla's constitutionally protected rights." *Id.* at 6–7; R.R. 132–133a.

The majority quotes the following from the Third Circuit's opinion:

The jury could certainly infer from Pettit's involvement—as an attorney, no less—that he should have known that a forfeiture proceeding could never take 11 years to come to fruition, and that he at some point should have questioned whether he was properly continuing to be the "stakeholder" of Brilla's property. His indifference to the issue of whether he was justified in keeping such proper-

ty gave rise to the award of punitive damages.

Slip op. at 3; R.R. 174a. From all of this Pettit argues, and the majority agrees, that the determination of liability for punitive damages because Pettit's conduct was "malicious, wanton or oppressive" means that the jury could have determined that Pettit acted only "wantonly," *i.e.*, recklessly or in callous disregard of or indifference to Brilla's property rights rather than willfully or intentionally. This conclusion most clearly is not justified by the record.

As the Controller of Washington County, the Board of Commissioners and the County (together, County) note, the District Court in discussing the motion for remittitur, stated in its opinion: "The evidence in this case, as described above, supports a finding that Pettit acted with reckless or callous disregard of, or indifference to Brilla's constitutionally protected property rights, *conduct on an equal footing with malice.*" Slip op. at 13; R.R. 139a (emphasis added). This conclusion is consistent with the definition of "malicious" provided in the jury instruction, which includes a concept of reckless disregard of a plaintiff's rights, and it satisfies the requirement of Section 8550 of the Judicial Code that it be "judicially determined ... that such act constituted ... actual malice or willful misconduct...." The County additionally stresses that the court of common pleas, while focusing on and emphasizing the word "or" in the phrasing of Interrogatory No. 4 ("conduct was malicious, wanton or oppressive"), ignores the statement in the jury instruction quoted above from R.R. 122a.

The common pleas court's opinion concludes its discussion on this point as follows:

> In the federal case, the parties stipulated that Pettit was acting under color of the authority of the Commonwealth in his dealings with Brilla's property. Trial transcript Page 676.

> Reviewing the record in the federal case, this Court finds Pettit's conduct on which the judgment was based was judicially determined to be under the color of state law and within the scope of his office and that Pettit reasonably believed that he was acting within the scope of his duties as district attorney.

Trial Court Opinion, slip op. at 11–12. The ultimate conclusion of the common pleas court finds no support in the record of the District Court proceedings. As the District Court explained in its charge, acting "under color of state law" is an element that a plaintiff must prove in order to establish a claim under 42 U.S.C. § 1983. The stipulation on this point simply indicates that Pettit was clothed with the authority of the state and was not acting as a private person. Although Pettit advanced the defense that he reasonably believed that he was acting within the scope of his duties as district attorney, the jury's verdict shows that it simply did not credit his assertions. While Pettit's dealings with the property in the course of the criminal proceedings commenced under the scope of his authority, his later actions and developments rendered such conduct beyond the scope of his duties.

One of the cases upon which the County relies is *Reitz v. County of Bucks,* 125 F.3d 139 (3d Cir.1997). There a great deal of property was seized in the course of a raid on a farm for a drug arrest. Family members of the person arrested petitioned the court of common pleas for return of items, and the court ordered certain property returned forthwith. Some items were returned, but the bulk of the property remained in the custody of the district attorney. Following a jury verdict in a forfeiture proceeding in October 1993 and an order to prosecutors to return property, it

still was not returned for approximately one year. In concluding that the facts defeated an assertion of qualified immunity in the resulting civil rights and state tort action, the Third Circuit stated:

> Although no statute or constitutional provision explicitly requires that the District Attorney's Office comply with a court order directing the return of improperly seized property within a reasonable amount of time, it is incomprehensible that a prosecutor faced with such an order would not know that he should comply timely and that a failure to do so would undermine the authority of the court.

*Reitz*, 125 F.3d at 147.

Despite certain differences from the matter *sub judice*, this general principle does indeed apply here. In addition, as the County points out, the period of deprivation involved here is much longer than in *Reitz*. It was eleven years after seizure and over four years after the April 25, 1996 order for the return of Brilla's property until the ultimate return of most of the property during pendency of the federal court action. The fact that the jury awarded no compensatory damages but $100,000 in punitive damages demonstrates that it intended to punish wrongdoing rather than merely to reprimand Pettit's indifference. In contrast with the brief episode involved in *Renk*, the duration of the period of violation of civil rights in the present matter supports a determination of "willful misconduct aforethought" under the interpretation of *Renk* that was provided in *Kuzel*. For these reasons, the majority's decision allowing for indemnification in this case is in error, and I therefore dissent.