Michael PENDER, A. Robert Mendel-
sohn, Jack Solomon and Harry
Thomas, Appellants

v.

SUSQUEHANNA TOWNSHIP, Steven J.
Condes, James M. Klein, Brian Allen,
Wendy J. Johnson, Stanley R. Lawson,
Sr., and James E. Campbell.

Commonwealth Court of Pennsylvania.

Argued Sept. 4, 2007.

Decided Oct. 9, 2007.

David J. Staudt, Harrisburg, for appellants.

Bruce D. Foreman, Harrisburg, for appellee, Susquehanna Township.

BEFORE: McGINLEY, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Michael Pender, A. Robert Mendelsohn, Jack Solomon and Harry Thomas, who are all former Commissioners (Former Commissioners) for Susquehanna Township (Township), appeal from an order of the Court of Common Pleas of Dauphin County (trial court) which granted the motion for summary judgment filed by Township, and the summary judgment motion of Steven J. Condes, James M. Klein, Brian Allen, Wendy J. Johnson, Stanley R. Lawson, Sr., and James E. Campbell (Commissioners) (Township and Commissioners are collectively referred to as Appellees), and dismissed with prejudice the Former Commissioners' second amended complaint, wherein Former Commissioners sought payment for legal fees. We affirm in part and reverse in part and remand for further proceedings.

In 1998, Vartan Enterprises, Inc. and others (Vartan) initiated a civil action in the trial court against the Township and others, including the Former Commissioners and Commissioners (collectively, Original Defendants), alleging unconstitutional revocation of Township permits for Vartan's pre-cast concrete operation under 42 U.S.C. § 1983 of the Federal Civil Rights Law. The case was thereafter removed to the United States District Court for the Middle District of Pennsylvania and assigned to Judge Kane.

Judge Kane bifurcated the trial into two phases. Phase I involved the liability portion and, if Vartan prevailed, then the Phase II portion pertaining to damages would occur. During Phase I of the proceedings, Original Defendants were represented by the Township's solicitor, Dean A. Weidner, Esq., special counsel to the Township, Thomas P. Wagner, Esq., and Robert G. Hanna, Jr., Esq., who was appointed by the Township's insurance carrier, St. Paul Fire and Marine Insurance Company (St.Paul). With respect to Phase I, a federal jury determined that Township and the Former Commissioners violated Vartan's right to substantive due process. The jury also determined that the Former Commissioners were subject to punitive damages due to their unlawful conduct. Following the jury verdict, St. Paul notified Township that there was no insurance coverage for punitive damages under the Township's policy and, further, that as a matter of law, punitive damages were uninsurable in the Commonwealth.

St. Paul, nonetheless, retained at its own expense Thomas P. Wagner, Esq., to represent both individually and collectively, the Former Commissioners. Wagner advised the Former Commissioners that they should rely on representation provided by David B. Dowling, Esq., who was then retained by Former Commissioners.

Thereafter, on August 23, 2000, all parties to the Vartan matter held a meeting (marathon meeting) in an attempt to reach a global settlement agreement on the issue of damages and avoid Phase II of the trial. During this meeting, there was discussion as to payment of Dowling's fees by the Township and the Commissioners. The parties then signed a "Joint Motion for Continuance of Trial, Hearings and Related Deadlines Pending Final Documentation, Ratification and Court Approval of Complete Settlement." After signing the Joint Motion, Dowling, in a letter dated August 31, 2000, stated that he opposed the global settlement agreement because it contained no provision for the payment of his legal fees. Township, however, believed that the discussions at the August 23, 2000 meeting were insufficient to form an oral contract.

In order that the global agreement could be executed, the parties agreed to carve out the Former Commissioners' right to

litigate the issue of whether Appellees were required to reimburse the Former Commissioners' legal costs. The "side agreement" was signed by all parties on September 9, 2000. The global settlement agreement with respect to the Vartan litigation was thereafter signed by all parties on September 19, 2000 and thereafter approved by Judge Kane. The global settlement agreement included, among other items, the payment to Vartan of $40,000.00 in punitive damages in non-public funds from the Former Commissioners, payment of the St. Paul insurance policy limits of $3 million to Vartan, payment of public monies by the Township of $1 million and the resignation of the Former Commissioners that were still in office.

Thereafter, the Former Commissioners sought payment from Appellees for the legal fees they incurred from the representation provided by Attorney Dowling, which amount is in excess of $63,000.00. Because of Appellees' refusal to pay, the Former Commissioners filed a first amended complaint in the trial court on June 14, 2001, for payment of their legal fees, to which Appellees filed preliminary objections. The trial court granted Appellees' preliminary objections as to Count I, wherein Former Commissioners alleged that Appellees were required to provide legal defense to the Former Commissioners under The First Class Township Code (Code) [1] and were also required to indemnify them for their legal expenses under the Judicial Code (Judicial Code), 42 Pa. C.S. §§ 101–9909.[2]

The trial court observed that with respect to legal expenses incurred by employees of local agencies, 42 Pa.C.S. § 8547 provides:

(a) **Mandatory provision of legal assistance generally.**

When an action is brought against an employee of a local agency for damages on account of an injury to a person or property, **and it is alleged** that the act of the employee which gave rise to the claim was within the scope of the office or duties of the employee, the local agency shall, upon the written request of the employee, defend the action, **unless or until there is a judicial determination that such act was not within the scope of the office or duties of the employee.**

(b) **Optional provision of legal assistance generally.**

When an action is brought against an employee of a local agency for damages on account of an injury ... **and it is not alleged** that the act of the employee which gave rise to the claim was within the scope of his office or duties, the local agency may, upon written request of the employee, defend the action.... If the local agency has refused a written request to defend the action, and it is judicially determined that the act was, or that the employee in good faith reasonably believed that such act was, within the scope of the office or duties of the employee and did not constitute a crime, actual fraud, actual malice or willful misconduct, the local agency shall reimburse the employee for the expenses of his legal defense.... [3]

---

1. Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. § 55101–58502.

2. The act, commonly referred to as the Political Subdivision Torts Claim Act, 42 Pa.C.S. §§ 8541–8542, is contained within the Judicial Code. All references will be to the Judicial Code.

3. According to the trial court's opinion and the briefs, there was no mention in Vartan that the Commissioners were acting within or outside the scope of their office. The Vartan pleadings are not in the record.

**(c) Control of litigation.**

When, pursuant to (a) or subsection (b), the local agency defends an action against an employee thereof at the request of the employee, it may assume exclusive control of the defense of the employee keeping him advised with respect thereto, and the employee shall cooperate fully with the defense, except that in situations where the legal counsel provided by the local agency determines that the interests of the employee and the local agency conflict, the local agency shall obtain the express written consent of the employee for such interested representation or shall supply written representation.

(Emphasis added.) The trial court determined that there was a judicial determination that the Former Commissioners' actions were outside the scope of their office based on the verdict sheet resulting from Phase I of the federal trial. Specifically, questions No. 4 and 11 of the verdict sheet asked the federal jury the following question with respect to revocation of Vartan's 1997 and 1998 permits:

> With regard to any individual defendants that you found are *not* entitled to qualified immunity, have Plaintiffs proven by a preponderance of the evidence that any of these individual defendants acted in his individual capacity with malicious or wanton disregard for Plaintiffs' right to due process, entitling Plaintiffs to punitive damages?
>
> Yes  X          No  _____
>
> If yes, which defendants so acted? If no, proceed to Question 5.

---

4. The trial court also determined that 42 Pa. C.S. § 8547(b) was inapplicable because in order for that section to apply, the complaint in the original matter would have had to have alleged that the Former Commissioners acted NOT within the scope of their employment.

| | |
|---|---|
| Commissioner Michael Pender | X |
| Commissioner Robert Mendelsohn | X |
| Commissioner Jack Solomon | X |
| Commissioner Harry Thomas | X |
| Commissioner Steven Condes | ___ |
| Commissioner James Klein | ___ |
| Zoning Officer Francis Kessler | ___ |
| Building Inspector William Garber | ___ |

In response to the year 1997, the jury in question No. 11 found that Commissioner Michael Pender, Commissioner Robert Mendelsohn and Commissioner Jack Solomon so acted.

Based on the above questions and answers, the trial court determined that the federal jury had determined that Former Commissioners acted outside the scope of their office, and also that the persons named were not entitled to any sort of qualified immunity.[4]

The trial court also considered the language contained in questions No. 1 and 8 of the verdict sheet. Question No. 1 stated:

> Have Plaintiffs proven by a preponderance of the evidence that any Defendants acted intentionally or recklessly to deprive Plaintiffs of their right to substantive due process in connection with the revocation of the Vartan permit in 1997, that is, that any Defendants acted as they did due to bias, bad faith, or improper motive such as partisan political reasons or personal reasons unrelated to the merits.

In response, the jury determined that the Township and Former Commissioners Pender, Mendelsohn, Solomon and Thomas

---

That, however, is not the factual scenario presented. The federal complaint reveals that the Former Commissioners were alleged to have acted within the scope of their employment.

so acted. Question No. 8 posed to the jury contained the same language as that found in question No. 1, except that such was asked with regard to the year 1998. As to 1998, the jury determined that the above named parties, in addition to Commissioner Klein and zoning officer Francis Kessler, acted in such manner.

According to the trial court, the above questions and answers supported the conclusion that the named individuals acted not only outside the scope of their office, but did so intentionally and recklessly. Because of the intentional and reckless misconduct, the trial court concluded that Former Commissioners could not recover counsel fees based on 42 Pa.C.S. § 8550, which states:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

The trial court denied the preliminary objections with respect to the remaining counts which alleged a breach of contract, a claim for account stated, promissory estoppel and a claim for unjust enrichment. (Trial court's 2002 order).

Thereafter, the Former Commissioners filed a second amended complaint. In response, both the Township and Commissioners filed motions for summary judgment. In addressing the motions for summary judgment (trial court's 2006 decision), the trial court observed that Count I of the Former Commissioners' complaint again alleged that Appellees were obligated to reimburse the Former Commissioners based upon the Judicial Code and the Code. Because Count I had already been addressed by the trial court in its previous 2002 opinion with respect to the Former Commissioners' first amended complaint, and as it was restated solely for the purpose of preserving it on appeal, the trial court dismissed Count I.

Count II of the complaint alleged a breach of contract, wherein the Former Commissioners maintained that during the August 23, 2000 marathon meeting, the Commissioners made a contract with Dowling that the Township would pay the Former Commissioners' legal fees. The trial court determined, however, that the Township had no statutory authority to reimburse the Former Commissioners for counsel fees because the fees were incurred due to the Former Commissioners' ultra vires actions. Therefore, even if Commissioners created a contract for reimbursement of legal fees, such contract was illegal and could not bind the Township inasmuch as the courts will not enforce an illegal contract. *Peyton v. Margiotti*, 398 Pa. 86, 156 A.2d 865 (1959).

Count III of the complaint, titled "Account Stated," claimed that Appellees assumed liability for the Former Commissioners' legal fees by implication because they did not affirmatively contest the bills sent to them by Dowling. The trial court reasoned, however, that the Township cannot by contract or implication, accept a debt that it is not legally authorized to accept.

The trial court addressed Count IV, which alleged promissory estoppel, Count VI which alleged fraudulent misrepresentation, Count VII which alleged negligent representation and Count VIII which alleged fraud, together. The trial court determined that the Former Commissioners knew before signing the global agreement

that Appellees were disputing their obligation to pay the Former Commissioners' legal fees, but signed the agreement nonetheless.[5]

As to Count V, wherein the Former Commissioners claimed that Appellees were unjustly enriched because they signed the global agreement thus ending the litigation with Vartan but did not pay the Former Commissioners' legal fees, the trial court observed that, if the Former Commissioners had not unlawfully discriminated against Vartan, there would have been no lawsuit.

Finally, as to Count IX, wherein the Former Commissioners claimed that Appellees must pay their legal fees because Appellees failed to provide the Former Commissioners with independent counsel from the beginning of the Vartan trial, the trial court observed that nowhere did the Former Commissioners allege that they ever requested independent counsel.

■ Based on the above determination, the trial court dismissed the second amended complaint with prejudice and this appeal followed. With respect to an order granting summary judgment, we will reverse the order of the trial court only where the court committed an error of law or abuse of discretion. *Minnesota Fire and Casualty Company v. Greenfield,* 579 Pa. 333, 855 A.2d 854 (2004). We will view the record in the light most favorable to the non-moving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. *Id.*

Initially, we address the issue of whether the trial court erred in determining that the Appellees had no statutory authority to reimburse the Former Commissioners under the Judicial Code.[6]

In accordance with 42 Pa.C.S. § 8547(a), when an action is brought against an employee of a local agency and it is alleged that the employee was acting "within the scope of the office or duties of the employee," the agency shall defend the employee "unless or until there is a judicial determination that such act was not within the scope of the office or duties of the employee." Here, the Former Commissioners argue that the trial court erred in equating the jury's finding of "malicious or wanton disregard for [a person's] right to due process" with a "judicial determination that such act [of the Former Commissioners] was not within the scope of the office or duties of the employee."

■ The Former Commissioners argue that the trial court erred in interpreting the Vartan verdict sheets to be a judicial determination that they acted not within the scope of their office or duties for three reasons. First, in Vartan, it apparently was not alleged and the verdict sheet did not specifically ask whether the Former Commissioners acted outside the scope of their duties. Thus, whether the Former Commissioners acted or did not act within the scope of their duties was, therefore, never before the jury.

5. In their Second Amended complaint, the Former Commissioners stated that they did not wish to jeopardize the global settlement with Vartan and thus entered into a side agreement. "The side agreement provided that [Former Commissioners] reserved the right to pursue their claims against the Township and Commissioners in their official capacity arising out of non-payment of legal fees incurred in the Vartan Litigation." Second Amended Complaint at ¶¶ 32–33.

6. Former Commissioners note that dismissal of the Former Commissioners' original Count I under that Act provided the basis for the trial court's dismissal of Count II and III of the Former Commissioners' seconded amended complaint.

Second, Former Commissioners reason that the jury verdict sheet returned the same affirmative answers to questions Nos. 1 and 8 with regard to the Township itself and that such a verdict is therefore inconsistent with a contemporaneous finding that Former Commissioners were acting outside the scope of their office. Finally the trial court's equation of the findings of the jury sheet with a "judicial determination that such act was not within the scope of the office or duties of the employee" is inconsistent with court precedent.

In addressing the arguments, we initially agree with Former Commissioners that there was never a determination that Former Commissioners acted not within the scope of their office so as to preclude reimbursement under 42 Pa.C.S. § 8547(a). As correctly stated by Former Commissioners, such question was never posed to the jury. Thus, there could have been no determination that Former Commissioners acted not within the scope of their employment. At best, the jury verdict found that Former Commissioners acted in their individual capacity. However, such does not equate to a determination that they were not acting within the scope of their office.

■ Moreover, neither does the jury finding of "malicious or wanton disregard" mean that the Former Commissioners acted not within the scope of their office or that they were judicially determined to have engaged in a crime, actual fraud, actual malice or willful misconduct so as to preclude reimbursement. In making such a determination, we are guided by this court's recent decision in *Pettit v. Namie,* 931 A.2d 790 (Pa.Cmwlth.2007.)

In *Pettit,* Frederick Brilla filed a civil rights action against district attorney Pettit alleging that Pettit unlawfully deprived him of his property.[7] A jury returned a verdict finding Pettit liable for violating Brilla's constitutional rights by depriving him of the use of his property. The jury awarded no compensatory fees, $1.00 in nominal damages and $100,000 in punitive damages finding that Pettit acted "maliciously or in reckless or callous disregard of, or indifference to" Brilla's constitutional rights.

Thereafter, Pettit sought reimbursement from the County and its Board of Commissioners (Collectively, County). Although the Washington Commissioners voted to indemnify Pettit, the County Controller advised them that he was denying payment to Pettit. Pettit then filed a complaint in mandamus and for declaratory judgment. Ultimately, the trial court granted Pettit's motion for summary judgment with respect to his claim for declaratory relief and determined that County was required to indemnify Pettit for the judgment entered against him in Brilla's federal civil rights action and that County was required to reimburse Pettit for reasonable attorney's fees and costs incurred in pursuing post-trial motions and appeals in federal court.

On appeal, this court affirmed. This court observed that, pursuant to 42 Pa.C.S. § 8548(a), when an action is brought against an employee of an agency, the employee is entitled to indemnification unless his acts are judicially determined to be crimes, actual fraud, actual malice or willful misconduct, 42 Pa.C.S. § 8550. This court then examined *Wiehagen v. Borough of North Braddock,* 527 Pa. 517, 594 A.2d 303 (1991), *Renk v. City of Pittsburgh,* 537 Pa. 68, 641 A.2d 289 (1994), and *Kuzel v.*

---

**7.** The property had been seized during the execution of a search warrant. The court of common pleas later ordered the return of the property.

*Krause,* 658 A.2d 856 (Pa.Cmwlth.1995) and determined the following:

> From these cases, *all of which permitted indemnification,* we glean the following rules. First, the Tort Claims Act's indemnification provision applies to *any* judgment, state or federal, that may be rendered against an employee while acting within the scope of his employment. *Wiehagen.* Second, such indemnification includes reasonable attorney's fees, costs and expenses incurred by the employee in the underlying action. *Id.* Third, in cases involving police conduct a jury verdict that a police officer committed an intentional tort, by itself, is insufficient to establish "willful misconduct." *Renk.* Rather, to establish willful misconduct, it must be shown the officer intended to commit the intentional tort. *Id.* Fourth, an award of punitive damages is not, by itself, sufficient to establish willful misconduct, because reckless conduct can be sufficient to support such an award. *Id.* Fifth, to establish willful misconduct, it must be shown that an employee *intentionally* committed a wrongful act. *Kuzel.* "Willful misconduct," as set forth in Section 8550 of the Tort Claims Act means "willful misconduct aforethought." *Id.* at 860.

This court concluded that the jury verdict that Pettit's conduct was in reckless disregard of the plaintiff's rights and was "malicious, wanton **or** oppressive" was not the equivalent of willful misconduct. In addition, the award of punitive damages was also insufficient to establish willful misconduct such that Pettit was entitled to indemnification. This court also determined that 42 Pa.C.S. § 8547 obligates an agency to reimburse an employee, acting in his capacity as a public officer, for legal expenses incurred in defending a claim.[8]

In this case, the trial court equated the jury's verdict sheet finding that former Commissions acted with "malicious or wanton disregard" and "recklessly" with that of willful misconduct. However, as in *Pettit,* reckless conduct is not the same as willful misconduct. In addition, neither is "malicious, wanton or oppressive" the equivalent of willful misconduct.

■ Moreover, we also disagree with Appellees' argument that the award of punitive damages is sufficient to establish willful misconduct in this case. First, we observe that there was no actual award of punitive damages inasmuch as the parties settled the case before damages were actually awarded. In addition, both *Renk* and *Pettit* provide that the award of punitive damages is insufficient to establish willful misconduct. This is so because reckless conduct may be sufficient to support an award of punitive damages but insufficient to preclude indemnification.

■ Because of our determination that indemnification by the Township is proper under the Judicial Code, we need not address Former Commissioners alternative theories advanced for the recoupment of attorney fees. However, we next address whether the trial court properly granted the motion for summary judgment filed by Commissioners.

**8.** Appellees claim that *Pettit* is distinguishable because in that case Pettit had his representation by a township attorney discontinued and he thereafter sought independent counsel because no defense was provided to him. Appellees maintain that in this case counsel was provided to Former Commissioners at all times. We note, however, as did the trial court, that after the federal verdict, St. Paul informed Township that there was no coverage for punitive damages. St Paul, nonetheless retained Thomas P. Wagner, Esq., who advised Former Commissioners, as did the Township's solicitor, to rely on representation provided by Attorney Dowling.

We begin by observing that the obligation of indemnification under the Judicial Code, which Former Commissioners allege in Count I, rests solely with the local agency and not with the elected officials who collectively govern the local agency. Thus, the indemnification provisions of the Judicial Code are inapplicable to the Commissioners. In Count II and Count III, alleging breach of contract and account stated, Former Commissioners claim that at the marathon meeting it was agreed that Township and Commissioners would pay their legal fees. The trial court granted summary judgment not because a contract wasn't formed but because there was no statutory duty to reimburse former Commissioners. As we have previously stated, however, the obligation to indemnify under the Act rests solely with the Township and Former Commissioners have failed to allege or produce any evidence that Commissioners agreed to pay Former Commissioners legal fees from personal accounts.

■ With respect to Counts IV, VI, VII and VIII, wherein Former Commissioners alleged promissory estoppel, fraudulent and negligent misrepresentation and fraud in the inducement, we agree with the trial court that summary judgment is proper with respect to the Commissioners. Specifically, all are based on Former Commissioners' argument that they relied on promises made by the Commissioners at the marathon meeting to pay their legal fees. However, Former Commissioners concede that before they signed the global settlement agreement with respect to the Vartan litigation they knew that Commissioners were contesting the payment of their legal fees. Thus, by their own admission, Former Commissioners knew at the time that they signed the global agreement that payment of their legal fees was in dispute. Therefore, there was no inducement to sign the global agreement.

■ In Count V Former Commissioners alleged unjust enrichment. Unjust enrichment has been described as benefits incurred on defendant by plaintiff, appreciation of the benefits by the defendant, and acceptance of such benefits under circumstances in which it would be inequitable for defendant to retain the benefits without payment of value. *Limbach Co., LLC v. City of Philadelphia*, 905 A.2d 567 (Pa. Cmwlth.2006). The mere fact that one party benefits from the act of another is on its own insufficient to justify restitution. There must also be an injustice in permitting the benefit to be retained without compensation. *Id.* Here, we agree with the trial court that it is improper to claim unjust enrichment because counsel for Former Commissioners helped settle a case that Former Commissioners caused in the first place.

■ Finally in Count IX, Former Commissioners alleged that in accordance with 42 Pa.C.S. § 8547(c), Appellees were required to pay Former Commissioners because Appellees failed to provide them with independent counsel. We observe, however, that 42 Pa.C.S. § 8547(c) is only applicable to the "local agencies." Thus, Commissioners had no obligation under 42 Pa.C.S. § 8547(c).

In accordance with the above, we reverse the decision of the trial court insofar as it granted Township's motion for summary judgment. The decision of the trial court granting the motion for summary judgment filed by the Commissioners is affirmed. This case is remanded for further proceedings.

### ORDER

Now, October 9, 2007, the Order of the Court of Common Pleas of Dauphin Coun-

ty, in the above captioned matter, insofar as it grants the motion for summary judgment filed by Steven J. Condes, James M. Klein, Brian Allen, Wendy J. Johnson, Stanley R. Lawson, Sr., and James E. Campbell, is affirmed. The order, insofar as it grants the motion for summary judgment filed by the Susquehanna Township, is reversed and the matter is remanded for further proceedings.

Jurisdiction relinquished.